## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| MidCountry Equipment Finance, a division of MidCountry Bank, a federally chartered savings bank organized and existing under the laws of the United States of America,<br><br>Plaintiff,<br><br>vs.<br><br>Auto Trans Group, Inc. and Violet Mihaylova,<br><br>Defendants. | Court File No. _____<br><br>**VERIFIED COMPLAINT** |

Plaintiff MidCountry Equipment Finance, a division of MidCountry Bank, a federally chartered savings bank organized and existing under the laws of the United States of America ("MidCountry"), as and for its Complaint against Defendants Auto Trans Group, Inc. ("Auto Trans") and Violet Mihaylova ("Mihaylova") states and alleges as follows:

## INTRODUCTION

1. MidCountry is a federally chartered savings bank with its principal place of business located at 7825 Washington Avenue South, Suite 1200, Bloomington, Minnesota 55439. MidCountry is engaged, among other things, in the business of leasing equipment or financing the sale of equipment to businesses.

2. Defendant Auto Trans is an Illinois corporation with its principal place of business located at 1830 Elmhurst Road, Elk Grove Village, IL 60007. Auto Trans is a customer of MidCountry.

3. Defendant Mihaylova is an individual and guarantor of the obligations of Auto Trans and resides at 301 N. Catalpa Street, Addison, IL 60101.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 in that this is an action between citizens of different states where the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

5. Venue is proper in the District of Minnesota pursuant to 28 U.S.C. § 1391 and by contractual consent of the parties. Specifically, Section 31 of the Master Lease Agreement (defined below) and Section 9 of the Guaranty (defined below) contain Defendants' consent to the non-exclusive personal jurisdiction and venue in the federal and state courts of the State of Minnesota.

## FACTUAL BACKGROUND

6. MidCountry and Auto Trans entered into a Master Lease Agreement and Lease Schedule (collectively, the "Lease Agreement") with a lease commencement date of November 30, 2016, subject to all the terms and conditions stated therein. A true and correct copy of the Lease Agreement, which is a finance lease within the meaning under Article 2A of the Uniform Commercial Code, is attached hereto as **Exhibit 1** and incorporated by reference.

7. To induce MidCountry to enter into the Lease Agreement, Mihaylova executed a guaranty (the "Guaranty") in favor of MidCountry on or about November 24, 2016. A true and correct copy of the Guaranty is attached hereto as **Exhibit 2** and incorporated herein by reference.

8.     Pursuant to Schedule A to the Lease Schedule, the Equipment subject to the Lease Agreement is as follows:

| <u>Qty</u> | <u>Description</u> |
|---|---|
| 1 | Wabash Arctic Lite Reefer Trailer, VIN#1JJV532B1HL005975 Reefer Serial #SAB91481718 |
| 1 | Wabash Arctic Lite Reefer Trailer, VIN#1JJV532B3HL005976 Reefer Serial #SAB91481708 |
| 1 | Wabash Arctic Lite Reefer Trailer, VIN#1JJV532B5HL005977 Reefer Serial #SAB91481699 |

Auto Trans accepted this Equipment.

9.     Among other obligations contained in Lease Agreement, including timely payments when due, Section 18 of the Lease Agreement, titled Insurance, provides:

> **INSURANCE**.  Lessee [Auto Trans] at its expense shall provide insurance coverage in amounts and with insurance carriers acceptable to Lessor [MidCountry] for all risks of: (a) loss, theft, damage or destruction to the Equipment, with coverage not less than the original cost of the Equipment (excluding depreciation); and (b) public liability and property damage covering personal injuries, death or property damage resulting from the ownership, maintenance, use, operation or transportation of the Equipment, with coverage of not less than $1,000,000 per occurrence.  Each of the insurance policies providing said coverage shall name Lessor and any Assignee as loss payee for property damage and additional insured for liability coverage, provide that the policy may not be canceled or materially altered without thirty (30) days prior written notice to Lessor, and be primary without right of contribution from any insurance carried by Lessor.  Lessee shall, if requested by Lessor, provide Lessor with a certificate(s) evidencing said coverage prior to taking possession of the Equipment.  Lessee hereby irrevocably appoints Lessor as Lessee's attorney-in-fact to make claim for, receive payment of, and execute and endorse all documents, checks or drafts for loss or damage or returned premium under any insurance policy of Lessee's.

10.     Additionally, Section 9 of the Lease Agreement requires Auto Trans to comply with all laws and regulations relating to the Equipment and its use.

- 4 -

11. Pursuant to Section 24 of the Lease Agreement, failure to observe or perform any obligations under the Lease Agreement, or Lessee's default to a different lender, shall each constitute an Event of Default. An Event of Default entitles MidCountry to exercise its remedies under Section 25 of the Lease Agreement and applicable law.

12. On April 11, 2017, MidCountry received notice of public sale and notice regarding redemption from Siemens Financial Services, Inc. (a different lender to Auto Trans) advising of Siemen's repossession of equipment "based upon the Debtor's [Auto Trans] failure to make payments … as required by the … Loan and Security Agreement...". This default to another lender is an Event of Default under Section 24 of the MidCountry Lease Agreement.

13. On or about May 1, 2017, it came to MidCountry's attention that the certificate of insurance, dated February 8, 2017, provided to MidCountry by Auto Trans was not effective, constituting an Event of Default under the Lease Agreement. Counsel for MidCountry provided Notice of Default to Auto Trans and advised that MidCountry would exercise a non-exclusive remedy pursuant to Section 25 of the Lease Agreement to force place insurance if a valid certificate of insurance was not immediately provided. All other rights and remedies are reserved, and not waived, by MidCountry.

14. Defendants have admitted that a valid certificate of insurance was not provided, but have failed to cure the default.

15. As a result of Auto Trans' default, Mid Country force placed insurance in the amount of $33,534.00. See correspondence at Exhibit 3.

16. It has also come to MidCountry's attention that Auto Trans is listed as "out of service" with the Department of Transportation ("DOT") and is attempting to operate under another company's DOT number.

17. Defendants have admitted that they are "out of service". This failure to obtain proper compliance is a default of Section 9 of the License Agreement. Defendants have failed to cure the default.

18. Auto Trans' multiple Events of Default entitle MidCountry to exercise its rights and remedies under Section 25 of the Lease Agreement and the Guaranty.

19. Under Section 25 of the Lease Agreement, MidCountry may accelerate the due date and all remaining rent payments.

20. Under Section 25 of the Lease Agreement, MidCountry may take possession of, sell, lease or otherwise dispose of, the equipment listed on Schedule A to the Lease Agreement included in Exhibit 1.

21. MidCountry has retained counsel and has incurred attorneys' fees, costs, and expenses as a result of Auto Trans' defaults.

## FIRST CAUSE OF ACTION
### (BREACH OF LEASE)

22. MidCountry hereby restates the allegations in paragraphs 1 through 21 of the Complaint as if fully set forth herein.

23. Defendant Auto Trans is in default pursuant to the terms of the Lease Agreement.

24. Despite demand, Auto Trans has failed to cure the events of default as set forth herein.

25. As a direct and proximate result of Auto Trans' Default, MidCountry is entitled to accelerate all amounts due and has been directly damaged in the principal amount of $196,813.31 (contractual discounted rate applied), in addition to accrued interest at the rate of $29.55 per diem from May 18, 2017, which interest continues to accrue through the date of judgment, plus force placed insurance of $33,534.00 and costs and reasonable attorneys' fees incurred.

## SECOND CAUSE OF ACTION
### (BREACH OF GUARANTY)

26. MidCountry hereby restates the allegations in paragraphs 1 through 25 of the Complaint as if fully set forth herein.

27. Pursuant to the Guaranty, Mihaylova "absolutely and unconditionally guarantee[d] to [MidCountry] full and prompt payment and performance when due of each and every obligation of [Auto Trans] under the [Lease Agreement]."

28. Pursuant to the Guaranty, Mihaylova is absolutely and unconditionally responsible and liable for all damages and other amounts owing to MidCountry as a result of the breach by Auto Trans of its obligations pursuant to the Lease Agreement.

29. Mihaylova has failed and refuses to honor her guaranty by failing to provide full and prompt performance of all obligations under the Lease Agreement and Guaranty

30. As a direct and proximate result of Auto Trans' Default and Mihaylova's breach of the Guaranty, MidCountry is entitled to accelerate all amounts due and has been directly damaged in the principal amount of $196,813.31 (contractual discounted rate applied), in addition to accrued interest at the rate of $29.55 per diem from May 18, 2017, which interest continues to accrue through the date of judgment, plus force placed insurance of $33,534.00 and costs and reasonable attorneys' fees incurred.

### THIRD CAUSE OF ACTION
### (CLAIM AND DELIVERY PURSUANT TO MINNESOTA STATUTES § 565.21 *et seq.*)

31. MidCountry hereby restates the allegations in paragraphs 1 through 30 of the Complaint as if fully set forth herein.

32. MidCountry is the owner of the Equipment and has leased the Equipment to Auto Trans subject to the terms and conditions of the Lease Agreement, which is a finance lease under Article 2A of the Uniform Commercial Code.

33. Auto Trans has accepted the Equipment and is in breach of its obligations under the Lease Agreement by, among other things, failure to provide MidCountry with proof of valid and effective insurance as required under Section 18 of the Lease Agreement.

34. As a result, MidCountry was required to force place insurance in the amount of $33,534.00.

35. By virtue of its breach of its obligations under the Lease Agreement, Auto Trans is no longer entitled to use and possession of the Equipment and is wrongfully detaining the Equipment. At present, Auto Trans is still in possession of the Equipment.

36. Section 25 of the Lease Agreement provides that Plaintiff is entitled to immediate possession of the Equipment; wherever situated, and for such purpose enter upon any premises without liability for so doing or requirement to post bond in any legal proceeding MidCountry is also entitled to hold, use, lease, sell or dispose of the Equipment at MidCountry's sole discretion.

37. Based upon the foregoing, MidCountry is entitled to an order (i) directing Defendants to deliver, or cause to be delivered, the Equipment to a location to be designated by MidCountry (ii) directing that the Equipment be immediately and permanently seized and taken from the possession of Auto Trans; and (iii) directing that the Equipment be delivered to MidCountry or its designated agent for repossession and sale.

WHEREFORE, MidCountry Equipment Finance seeks the following relief:

1. Judgment against Defendants, jointly and severally, in the principal amount of $196,813.31 (contractual discounted rate applied), in addition to accrued interest at the rate of $29.55 per diem from May 18, 2017, which interest continues to accrue through the date of judgment, plus force placed insurance of $33,534.00 and costs and reasonable attorneys' fees incurred.

2. Enter a judgment and order directing Auto Trans to deliver or cause to be delivered the Equipment to a location to be designated by MidCountry or the Court;

3. Enter a judgment and order directing that the Equipment be immediately and permanently seized and taken from the possession of Auto Trans and delivered to MidCountry or its designated agent;

4. Enter a judgment and order granting to MidCountry the exclusive right to possession of the Equipment to be sold at public or private sale, the proceeds of which shall be first applied to cost of repossession and sale and then toward satisfaction, or partial satisfaction, of MidCountry's money judgment and/or amounts owed to MidCountry;

5. Costs, disbursements, interest pursuant to Minn. Stat. §549.09, and reasonable attorneys' fees pursuant to the parties' above-defined agreements; and

6. Award MidCountry such other and further relief as the Court deems just and equitable.

MESSERLI & KRAMER P.A.

Dated: May 23, 2017

By: *s/ Joshua A. Hasko*
Joshua A. Hasko (303471)
Joseph W. Lawver (#151269)
1400 Fifth Street Towers
100 S. Fifth Street
Minneapolis, MN 55402-1217
(612) 672-3600
jhasko@messerlikramer.com
jlawver@messerlikramer.com

ATTORNEYS FOR PLAINTIFF
MIDCOUNTRY EQUIPMENT FINANCE

1469064.1

- 10 -

## VERIFICATION

I, Michael J. McShane, President of MidCountry Equipment Finance, declare under penalty of perjury that the factual information contained in the Complaint is true and correct according to the best of my knowledge, information and belief, or if averred on information and belief, are true to the best of my information and belief based on my information and the investigation of my counsel.

Dated: May 24th, 2017

_____
Michael J. McShane

Subscribed and sworn to before me
this 24th day of May, 2017.

_____
Notary Public

SHAWN PAUL KOPNICK
Notary Public
State of Minnesota
My Commission Expires
January 31, 2022